IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| INTEGRITY MANAGEMENT OF FLORIDA, L.L.C., a Florida limited liability company, | 4:08CV3079 |
| Plaintiff, | **MEMORANDUM AND ORDER** |
| v. | |
| DENTAL WEBSMITH, INC., a Kentucky corporation, | |
| Defendant. | |

The plaintiff, Integrity Management of Florida, L.L.C. ("Integrity"), creates, maintains, and supports websites for chiropractors and chiropractic clinics in several states. Integrity's principal place of business is located in Lincoln, Nebraska. The defendant, Dental WebSmith, Inc. ("Dental WebSmith"), creates, maintains, and supports websites for dentists and dental clinics in several states. Dental WebSmith is a Kentucky corporation and its principal place of business is located in Benton, Kentucky. Dental WebSmith has no assets, offices, or employees in Nebraska, and it is not registered to conduct any business in Nebraska.

Integrity seeks a declaratory judgment that it did not infringe upon Dental WebSmith's copyright by using an image of a dental hygienist on the websites of its clients. Alternatively, Integrity seeks a determination of the amount of damages it owes to Dental WebSmith because of the alleged copyright infringement. Dental WebSmith has moved to dismiss the action for lack of personal jurisdiction.

The analysis of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) generally examines (1) whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute and (2) whether the exercise of personal

jurisdiction comports with the requirements of due process. *See Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 693 (8th Cir. 2003). However, because "Nebraska has construed its long-arm statute to confer jurisdiction to the fullest extent permitted by the United States Constitution[,]" *id.* (footnote omitted), only the due process issue needs to be examined here.

> Due process requires that there be sufficient "minimum contacts" between the nonresident defendant and the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Sufficient minimum contacts exist when the "defendant's conduct and connection with the forum state are such that he [or she] should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. 559. In assessing the defendant's reasonable anticipation, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant <u>himself</u> that create a 'substantial connection' with the forum State." *Id.* (emphasis in original).
>
> We apply a five factor test in analyzing the constitutional requirements needed for personal jurisdiction. *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir.1987) (citations omitted). These factors are: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Id.* "The first three factors are of primary importance, and the last two are 'secondary factors.'" *Id.*

*Id.* at 693-94. "The central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003) (citing *Burger King*, 471 U.S. at 475; *World-Wide*, 444 U.S. at 297). "Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Id.* (citing *Clune v. Alimak AB*, 233 F.3d 538, 544 n. 8 (8th Cir. 2000)).

"The [Supreme] Court has also identified two types of personal jurisdiction: general and specific." *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 648 (8th Cir. 2003). "When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984); *Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1103 (8th Cir.1996)). "However, if the exercise of jurisdiction does not depend on the relationship between the cause of action and the defendant's contacts with the forum state, the exercise of personal jurisdiction is one of general jurisdiction." *Id.* (citing *Helicopteros Nacionales*, 466 U.S. at 415 n. 9). "When general jurisdiction is in question, a defendant may be subject to the forum state's exercise of personal jurisdiction if contacts with the state are continuous and systematic." *Id.* (citing *Helicopteros Nacionales*, 466 U.S. at 414).

"To survive a motion to dismiss for lack of personal jurisdiction a plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." *Pecoraro*, 340 F.3d at 561 (citing *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996)). "The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Epps*, 327 F.3d at 647 (citing *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir. 1992); *Newhard, Cook & Co. v. Inspired*

3

*Life Centers, Inc.*, 895 F.2d 1226, 1228 (8th Cir. 1990). "While the plaintiffs bear the ultimate burden of proof, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." *Id.* (citing *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir.1991)).

Integrity claims that specific jurisdiction exists because Dental WebSmith sent demand letters to Integrity's clients with the intent to injure Integrity's business in Nebraska. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) (Florida reporter and editor could be sued in California for allegedly libelous story published in nationally circulated tabloid because California was focal point of their story and of harm suffered by plaintiff, who lived and worked in California); *Metropolitan Life Insurance Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990) (California court's exercise of personal jurisdiction over Alabama resident, who was one of two designated beneficiaries of group life policy, was consistent with due process and California long-arm statute, where group life insurer and other designated beneficiary, who was California resident, alleged that Alabama resident intentionally caused injury to California resident by submitting fraudulent documents to insurer in California representing that California resident was dead); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (Georgia golf club that held "Masters" trademark and sent letter to registrar of Internet domain names in Virginia challenging California computer services company's use of "masters.com" domain name purposefully availed itself of privileges of conducting activities in California, and was thus subject to specific jurisdiction there in company's resulting declaratory judgment action, since letter targeted California company and forced company to either bring suit or lose control of its website); *Yahoo! Inc. v. La Ligue Contre Le Racism et L'Antisemitisme*, 433 F.3d 1199, 1209-10 (9th Cir. 2006) (French litigants' obtaining of orders from French court directing California Internet service provider to take actions in California, on threat of substantial penalty, constituted sufficient contact with forum to satisfy "purposeful availment" prong of personal jurisdiction test, in ISP's action for declaration as enforceability of orders

in United States); *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1073 (10th Cir. 2008) (Internet retailers adequately stated that non-resident copyright owner had engaged in intentional and wrongful act of interfering with retailers' business, as required to satisfy purposeful direction or availment prong of due process minimum contacts analysis for exercise of specific personal jurisdiction over owner, on allegations that owner sent erroneous notice of claimed infringement to eBay specifically designed to terminate retailer's auction on website, owner then expressly threatened to bring suit in order to prevent revival of auction, and owner knew that invocation of notice procedures would cause retailer to lose business and damage its business reputation).

The difficulty with Integrity's position is that the present action does not seek to obtain any relief—either monetary or injunctive—for Dental WebSmith's alleged intentional interference with Integrity's business. The limited nature of the action is stated in the introductory paragraph to the complaint, as Integrity alleges:

> Dental WebSmith has threatened to initiate litigation against Integrity, contending that Integrity has violated a copyright owned by Dental WebSmith. In this action, Integrity seeks a declaratory judgment that it has not infringed Dental WebSmith's copyright. Alternatively, in the event it is determined that Integrity did infringe a copyright belonging to Dental WebSmitih [sic], Integrity further seeks a declaration as to the damages, if any, recoverable by Dental WebSmith.

(Filing 1, ¶ 1, at CM/ECF p. 1.)  Similarly, in a concluding paragraph designated as its "claim for relief", Integrity alleges, after incorporating preceding "background" allegations, that "[t]here is a real and active controversy between Integrity and Dental WebSmith as to whether Integrity violated Dental WebSmith's intellectual property rights as well as whether, and to what extent, Dental WebSmith is entitled to damages for the claimed violation of Dental WebSmith's intellectual property rights." (Filing 1, ¶ 16, at CM/ECF p. 4.)  For its demand for relief under Federal Rule of Civil Procedure 8(a)(3), "Integrity respectfully requests a declaration from the Court that

5

it did not unlawfully copy, publish, distribute and/or commercially exploit copyrighted content purportedly belonging to Dental WebSmith[,]" and "[i]n the event it is determined that Integrity did unlawfully copy, publish, distribute and/or commercially exploit copyrighted content belonging to Dental WebSmith, Integrity further respectfully request a declaration from the Court as to the damages, if any, recoverable by Dental WebSmith." (Filing 1, at CM/ECF p. 4.)

Dental WebSmith's contacts with Integrity's clients are not relevant to this declaratory judgment action. That is to say, the limited issues of whether Integrity is guilty of copyright infringement, and, if so, the amount of damages it owes, do not arise out of, and are not related to, Dental WebSmith's actions in sending demand letters to Integrity's clients. Consequently, specific jurisdiction does not exist based on those demand letters.

Integrity also alleges that it received an email demand from Dental WebSmith before the demand letters to its clients were sent out:

> On February 19, 2008, Dental WebSmith informed Integrity, via e-mail, that it believed Integrity had unlawfully utilized an image of a dental hygienist named Shannon from Benton, Kentucky, which is purportedly held under a registered copyright by Dental WebSmith, on more than 120 different websites Integrity had created for chiropractors and chiropractic clinics in approximately 13 states.
>
> In the same correspondence, Dental WebSmith claimed that the image of Shannon had never been sold and is exclusively licensed to only its clients. Dental WebSmith further claimed that each of Integrity's uses of the image on the websites or other materials it created constitute separate, actionable instances of copyright infringement entitling Dental WebSmith to statutory and other damages for each such alleged use. In this connection, Dental WebSmith demanded that Integrity cease and desist from all uses of the image of Shannon immediately and further demanded that Integrity pay a settlement amount in excess of $45,000.00.

(Filing 1, ¶¶ 8, 9, at CM/ECF pp. 2-3 (paragraph numbering omitted).)  Generally, a cease-and-desist notice is not sufficient to establish personal jurisdiction over the sender of the notice.  See *Yahoo! Inc.*, 433 F.3d at 1208.

> There are strong policy reasons to encourage cease and desist letters.  They are normally used to warn an alleged rights infringer that its conduct, if continued, will be challenged in a legal proceeding, and to facilitate resolution of a dispute without resort to litigation.  If the price of sending a cease and desist letter is that the sender thereby subjects itself to jurisdiction in the forum of the alleged rights infringer, the rights holder will be strongly encouraged to file suit in its home forum without attempting first to resolve the dispute informally by means of a letter.  See *Red Wing Shoe* [*Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360-61 (Fed.Cir.1998)]; *Cascade Corp. v. Hiab-Foco AB*, 619 F.2d 36, 38 (9th Cir.1980); *Douglas Furniture Co. of Cal., Inc. v. Wood Dimensions, Inc.*, 963 F.Supp. 899, 903 (C.D.Cal.1997) ("If any attempt by an intellectual property holder to put an alleged wrongdoer on notice forced the property holder to submit to the jurisdiction of the alleged wrongdoer's forum, an intellectual property owner would be forced to file an action in his own jurisdiction in order to avoid the threat of being haled before a court in another, possibly distant state.").

*Id.*  The mere fact that Dental WebSmith included a settlement demand with its cease-and-desist notice does not alter the situation.  *See, e.g., Krambeer v. Eisenberg*, 923 F.Supp. 1170, 1175 (D.Minn. 1996) (single debt collection letter mailed to plaintiff's home in Minnesota not sufficient to permit court to exercise personal jurisdiction in action brought under Fair Debt Collection Practices Act).  I therefore find that Dental WebSmith did not purposefully avail itself of the privilege of conducting activities in Nebraska by emailing Integrity on February 19, 2008, and cannot reasonably have anticipated being haled into court in Nebraska as a result of that email.

Integrity additionally argues that general jurisdiction exists because Dental WebSmith "holds itself out as having copyright ownership of a web site created for

a dental clinic in Hastings, Nebraska." (Filing 34-2, "Declaration of Keith Maule in Opposition to Defendant's Motion to Dismiss", ¶ 13, at CM/ECF p. 4.) According to Mr. Maule, the President and CEO of Integrity, "Bauer & Howard Dental Care, L.L.P. has a web sit address of http://www.hastingsdentist.com. The copyright notification at the bottom of each page within the web site indicates that Dental [WebSmith] holds copyright ownership." (*Id.*) This is not sufficient evidence of "continuous and systematic" contacts with Nebraska to constitute a prima facie showing of personal jurisdiction. *See, e.g., Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006) (defendant's collaboration with a Minnesota resident on one project and a publishing relationship with a Minnesota company were insufficient to warrant general jurisdiction in that forum).

Because I conclude that personal jurisdiction is lacking, I will grant Dental WebSmith's motion to dismiss. Although not requested, I will also grant Integrity leave to file an amended complaint, if it so desires, in order to add a separate claim for intentional interference with its business relationships, based on the allegations concerning Dental WebSmith's contacts with its clients.[1] I do this because even

---

[1]Integrity alleges in this regard that:

> After Integrity refused to pay the demanded sum and made a counteroffer, Dental WebSmith undertook efforts to contact Integrity's clients directly. In such contacts, Dental WebSmith demanded payment from Integrity's clients for the use of the image of Shannon on the individual websites Integrity created for its clients. Dental WebSmith knew Integrity had created the websites for these clients and, on information and belief, decided to contact its clients directly in an effort to harm Integrity's business and its existing client relationships.
> By way of illustration, on March 27, 2008, an attorney representing Dental WebSmith sent a letter to Cullins Chiropractic Clinic, Inc., in Hemet, California, demanding payment of $4,500.00 for the alleged harm Dental WebSmith claims to have suffered from this use of the image of Shannon. The website for Cullins Chiropractic Clinic

though the complaint only includes a demand for declaratory relief regarding Integrity's potential liability to Dental WebSmith for copyright infringement, "the demand is not itself a part of the plaintiff's claim[.]" *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002). Thus, under federal practice, the "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed.R.Civ.P. 54(c). I do not decide whether the factual allegations of the complaint are sufficient to state an actionable claim for intentional interference with business relations, but merely allow for the possibility of such a claim, which, if properly alleged, could cure the jurisdictional defect.[2] If Integrity does elect to file an amended complaint, the intentional tort claim should be set out

---

> is owned, created, and operated by Integrity pursuant to its contract with Cullins Chiropractic Clinic. This correspondence also stated that failure to pay the demanded sum could result in criminal prosecution under the federal copyright laws and imposition of statutory damages up to $150,000.00 for intentional violation of Dental WebSmith's copyrights.
> 
> Dental WebSmith contacted Integrity's clients with the intent of harming Integrity's business and to damage Integrity's reputation with its clients.
> 
> Dental WebSmith's efforts to directly contact Integrity's customers have had adverse consequences on Integrity's business and future dealings with its current clients.
> 
> Through its actions, Dental WebSmith intended Integrity to suffer these harmful effects in this district. Furthermore, Dental WebSmith knew that these harmful effects would be felt by Integrity in this district because Dental WebSmith had previously dealt with Integrity in this jurisdiction and knew that its principal place of business is in Nebraska.

(Filing 1, ¶¶ 10-14, at CM/ECF pp. 3-5 (paragraph numbering omitted).)

[2] For purposes of ruling on the pending motion, I do not construe the complaint to include a claim for intentional interference with business relations. As discussed above, the complaint's introductory paragraph and "claim for relief" paragraph also indicate that Integrity is seeking relief only with respect to Dental WebSmith's alleged copyright infringement claim.

9

as a separate count from the declaratory judgment (contract infringement) claim. *See* Fed.R.Civ.P. 10(b).

Accordingly,

IT IS ORDERED that:

1. Defendant's motion to dismiss (filing 26) is granted.

2. On the court's own motion, Plaintiff is granted leave to file an amended complaint on or before October 10, 2008.

3. If an amended complaint is not filed on or before October 10, 2008, a final judgment will be entered, by separate document, dismissing this action for lack of personal jurisdiction.

September 19, 2008.                    BY THE COURT:

                                       s/ *Richard G. Kopf*
                                       United States District Judge